UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                            Case No. 22-CR-26

ROY HENTON, a/k/a "Pops,"

    Defendant.

## INFORMATION

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1. Beginning by at least June 2020, and continuing until on or about November 29, 2022, in the State and Eastern District of Wisconsin and elsewhere,

**ROY HENTON, a/k/a "Pops,"**

knowingly and intentionally conspired with other persons known and unknown to the grand jury, to possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

2. The amount involved in the conspiracy attributable to ROY HENTON, as a result of his own conduct, and the conduct of other co-conspirators reasonably foreseeable to him, is 40 grams or more of a mixture and substance containing a detectable

amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance; 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance; and 100 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), and Title 18, United States Code, Section 2(a).

2

Case 2:22-cr-00026-PP   Filed 05/28/25   Page 2 of 13   Document 514

## COUNT TWO

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

From in or about June 2020 through on or around November 29, 2022, in the State and Eastern District of Wisconsin and elsewhere,

**ROY HENTON, a/k/a "Pops,"**

knowingly combined, conspired, and agreed with each other and with other persons known and unknown to the grand jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, drug trafficking as charged in Count One, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

3

Case 2:22-cr-00026-PP   Filed 05/28/25   Page 3 of 13   Document 514

## COUNT THREE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

On or about November 29, 2022, in the State and Eastern District of Wisconsin,

**ROY HENTON**

knowingly possessed at least one firearm in furtherance of the drug trafficking offense charged in Count One of this Information.

In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT FOUR

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. At all times material to this indictment:

   a. Defendant ROY HENTON owned and operated A Touch of Love Supportive Care Agency (ATOL).

   b. Defendant PHILLIP DANIELS operated First Response Supportive Care (FRSC) and assisted in operations of ATOL.

   c. Defendant LENARD MONROE owned and operated Wellness Personal Care Service (WPCS).

   d. ATOL and FRSC were Supportive Home Care (SHC) agencies that billed for services purportedly provided to adults with disabilities and elderly people in Milwaukee, Wisconsin.

   e. WPCS was a Personal Care Agency (PCA) that billed Wisconsin Medicaid for services purportedly provided to adults with disabilities and elderly people in Milwaukee, Wisconsin.

### The Wisconsin Medicaid Program

   f. Medicaid was a program jointly funded by the federal government and participating states to provide health insurance to indigent families with dependent children and to aged, blind, and disabled individuals whose income and resources are insufficient to meet the cost of medical services. 42 U.S.C. §§ 1396, et seq. (the "Medicaid Act").

5

g. Wisconsin participates in the Medicaid program ("Wisconsin Medicaid"). In Wisconsin, the Medicaid program was established pursuant to Wisconsin Statutes Chapter 49 and its administrative regulations. The United States pays for a portion of the program. The Wisconsin Department of Health Services (DHS) administers the Wisconsin Medicaid program on behalf of the state and federal government.

h. DHS operates a Personal Care Agency (PCA) program through Medicaid. A PCA is a home health agency, county department, independent living center, American Indian tribe or band, or a freestanding PCA that provides services that are (1) medically-oriented activities related to assisting an individual with activities of daily living necessary to maintain the individual in his or her place of residence in the community; (2) provided upon written orders of a physician by a certified personal care provider; and (3) provided by a personal care worker (PCW), employed by the provider and under contract to the provider, who is supervised by a registered nurse according to a written plan of care.

i. A PCA can submit claims to Wisconsin Medicaid for payment via the ForwardHealth Portal ("the portal") using direct data entry (DDE). The PCA requests secure access to the portal and, using the login associated with their provider IDs, completes required fields in the portal, including member ID, date of service, procedure code, number of units, charge amount, and place of service. The PCA may only submit claims after the services have been provided, and the PCA is responsible for the accuracy of the claims submitted via the portal. Medicaid remits payments to the PCA based on the approved claims.

j. To participate in the Medicaid program, a PCA provider must enter into a written Medicaid Provider Agreement (the "Provider Agreement") with the Wisconsin Department of Health Services in which the provider certifies that every claim submitted is truthful and that the services billed have been furnished in accordance with state and federal law. The Provider Agreement also requires a certification that the provider has not offered, paid, or received anything of value in return for the referral or provision of Medicaid-covered services.

k. The IRIS program (Include, Respect, I Self-Direct) is a Medicaid Home and Community-Based Services (HCBS) waiver program authorized under § 1915(c) of the Social Security Act and approved by the Centers for Medicare and Medicaid Services (CMS). IRIS is a self-directed program for adults with disabilities and elderly people in Wisconsin. To be eligible for the IRIS program, one must be eligible for Medicaid, need the same level of care as someone in a nursing home, and live in a home, apartment, adult family home, or residential care apartment complex. IRIS participants receive a budget for a range of goods, support, and services, including SHC.

l. A SHC agency must have a valid Medicaid provider's agreement to provide SHC services under the umbrella of the IRIS program and must employ direct-care workers.

m. A SHC agency submits SHC claims directly to the participant's Fiscal Employer Agency (FEA) monthly using an IRIS provider invoice, which includes the SHC agency information, the participant's information, dates of service, service codes, units, unit rate, unit type, and the total dollar amount. The FEA adjudicates claims based

7

on the participant's approved authorization. If the claims are authorized, the FEA will submit the claims to DHS for funding. DHS will then fund a zero-balance state-held bank account. The SHC agency then receives reimbursement for the claim through an electronic funds transfer.

    n.  To participate in the home and community-based waiver services under Wisconsin's Medicaid program, a SHC agency must enter into a written Wisconsin Medicaid Program Provider Agreement with the Wisconsin Department of Health Services in which the provider agrees to comply with all applicable federal and state laws, regulations, and policies relating to providing home and community-based waiver services under Wisconsin's Medicaid program and to provide only the items or services authorized by the managed care organization or IRIS program.

<u>The Scheme</u>

  2.  Beginning by at least August 25, 2018, and continuing through November 29, 2022, in the State and Eastern District of Wisconsin and elsewhere,

**ROY HENTON, a/k/a "Pops,"**

knowingly and willfully executed and attempted to execute a scheme to defraud a health care benefit program, namely Wisconsin Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of such program, in connection with the delivery of and payment for health care benefits, items, and services.

  3.  DANIELS, HENTON, MASSEY, and MONROE executed the scheme in the following ways:

a. DANIELS and HENTON advertised and provided housing to individuals who qualified for Medicaid services. In some instances, MONROE referred individuals to DANIELS and HENTON for housing services.

b. DANIELS and HENTON controlled various rental units in Milwaukee, Wisconsin.

c. DANIELS and HENTON offered discounted rent and paid stipends to individuals who were signed up for supportive care service with their entities, ATOL and FRSC.

d. DANIELS and HENTON recruited individuals who MONROE billed for Medicaid-covered services through WPCS. MONROE paid FRSC for these referrals and to maintain the individuals as members and participants of WPCS and ATOL.

e. DANIELS and HENTON coached Medicaid members to feign limitations in their activities of daily living to increase the hours that could be billed to Medicaid.

f. MASSEY purported to serve as a PCW for WPCS. MASSEY, MONROE, DANIELS, and HENTON also used stock, template timesheets to memorialize the purported care being provided. As a result, MASSEY, MONROE, DANIELS, and HENTON knowingly submitted and caused to be submitted timesheets that misstated the duration, frequency, date, and nature of the services provided, as well as the number of miles claimed.

9

g. DANIELS, HENTON, MASSEY, and other individuals they directed and controlled, knowingly submitted and caused to be submitted Provider Claim Forms that misstated the date, frequency, and duration of services provided.

h. DANIELS, HENTON, MASSEY, and MONROE, and other individuals they directed and controlled, submitted claims for payment to Medicaid based on those false and fraudulent statements.

4. DANIELS and HENTON submitted and caused to be submitted bills totaling over $600,000, which contained false and fraudulent statements, and which caused Wisconsin Medicaid to pay them over $574,000 to which they were not entitled.

5. DANIELS and HENTON used bank accounts in the names of FRSC and ATOL to receive cash deposits in addition to the above-noted Medicaid payments. More specifically, between January 2018 and May 2022, accounts in the name of FRSC and ATOL received over $1.3 million in unexplained cash deposits. During this same time period, bank accounts in the names of FRSC and ATOL reflected over $2.7 million in cash withdrawals.

6. Bank accounts in the names of FRSC were further used to receive drug proceeds through transactions conducted by DANIELS, MASSEY, and other members of the drug trafficking organization, and to transfer monies contained therein to known suppliers of controlled substances, thereby advancing the goals of the drug trafficking organization.

7. MONROE submitted and caused to be submitted bills totaling over $1.3 million, which contained false and fraudulent statements, and which caused Wisconsin Medicaid to pay him over $1.1 million to which he was not entitled.

8. On or about the dates set forth below, in the State and Eastern District of Wisconsin and elsewhere,

ROY HENTON, a/k/a "Pops,"

for the purpose of executing the scheme described above, and in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully submitted and caused the submission of the following false and fraudulent claim on the dates below, which falsely represent the nature of the provider's interaction with the member indicated below, falsely represented that covered services were provided, and falsely represented the amount of time spent providing covered services, which caused payments in the following amounts:

| Count | Service Date | Billed Date | Member | Amount Billed | Amount Paid |
|---|---|---|---|---|---|
| 25 | 5/23/2021 | 6/10/2021 | U.A. | $80 | $80 |

In violation of Title 18, United States Code, Sections 1347 and 2(a).

## FORFEITURE NOTICE

1. Upon conviction of one or more offenses in violation of Title 21, United States Code, Sections 841 and 846, the defendant shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violations and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violations, including but not limited to the following:

   a. approximately $885.21 in United States currency seized from Chase Bank Account ending in x8205, in the name of Intelligent Investments;

   b. approximately $184.67 in United States currency seized from Educators Credit Union Account ending in x13_08, in the name of A Touch of Love Supportive Care Agency/The Perfect Choice Supportive Care Agency;

   c. approximately $5.00 in United States currency seized from Educators Credit Union Account ending in x13_00, in the name of A Touch of Love Supportive Care Agency/The Perfect Choice Supportive Care Agency; and

   d. a money judgment in the amount of proceeds the defendants obtained, directly or indirectly, as a result of the offense or offenses of conviction.

2. Upon conviction of the health care fraud offense, in violation of Title 18, United States Code, Section 1347, or the money laundering offense, in violation of Title 18, United States Code, Section 1956(h), the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1) and 982(a)(7), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violations, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offenses,

3. If any of the property described above, as a result of any act or omission by a defendant cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Date: 5/28/25

*for* RICHARD G. FROHLING
Acting United States Attorney