UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

Case No. 22-CR-26 (PP)

[18 U.S.C. §§ 2(a), 371, 1343, 1347, & 1957; 42 U.S.C. § 1320a-7b]

LENARD MONROE,

          Defendant.

## THIRD SUPERSEDING INDICTMENT

### COUNT ONE
(Conspiracy)

**THE GRAND JURY CHARGES THAT:**

1. Beginning by at least November 2019, and continuing through on or about December 23, 2021, in the State and Eastern District of Wisconsin,

**LENARD MONROE**

knowingly conspired with P.D. and others known and unknown to the grand jury, to solicit, receive, offer, and pay remuneration in return for referring an individual to a person for the furnishing and arranging for the furnishing of personal care services, a service for which payment may be made in whole or in part under Wisconsin Medicaid, a Federal healthcare program, in violation of Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and 1320a-7b(b)(2)(A).

1

## Background

2. At all times material to this indictment:

    a. Defendant LENARD MONROE owned and operated Wellness Personal Care Service (WPCS).

    b. WPCS was a Personal Care Agency (PCA) that billed Wisconsin Medicaid for services purportedly provided to adults with disabilities and elderly people in Milwaukee, Wisconsin.

    c. R.H. owned and operated A Touch of Love Supportive Care Agency (ATOL).

    d. P.D. operated First Response Supportive Care (FRSC) and assisted in operations of ATOL.

    e. ATOL and FRSC were Supportive Home Care (SHC) agencies that billed for services purportedly provided to adults with disabilities and elderly people in Milwaukee, Wisconsin.

### The Wisconsin Medicaid Program

    f. Medicaid was a program jointly funded by the federal government and participating states to provide health insurance to indigent families with dependent children and to aged, blind, and disabled individuals whose income and resources are insufficient to meet the cost of medical services. 42 U.S.C. §§ 1396, et seq. (the "Medicaid Act").

    g. Wisconsin participates in the Medicaid program ("Wisconsin

Medicaid"). In Wisconsin, the Medicaid program was established pursuant to Wisconsin Statutes Chapter 49 and its administrative regulations. The United States pays for a portion of the program. The Wisconsin Department of Health Services (DHS) administers the Wisconsin Medicaid program on behalf of the state and federal government.

   h. DHS operates a Personal Care Agency (PCA) program through Medicaid. A PCA is a home health agency, county department, independent living center, American Indian tribe or band, or a freestanding PCA that provides services that are (1) medically-oriented activities related to assisting an individual with activities of daily living necessary to maintain the individual in his or her place of residence in the community; (2) provided upon written orders of a physician by a certified personal care provider; and (3) provided by a personal care worker (PCW), employed by the provider and under contract to the provider, who is supervised by a registered nurse according to a written plan of care.

   i. A PCA can submit claims to Wisconsin Medicaid for payment via the ForwardHealth Portal ("the portal") using direct data entry (DDE). The PCA requests secure access to the portal and, using the login associated with their provider IDs, completes required fields in the portal, including member ID, date of service, procedure code, number of units, charge amount, and place of service. The PCA may only submit claims after the services have been provided, and the PCA is responsible for the accuracy of the claims submitted via the portal. Medicaid remits payments to the PCA based on the approved claims.

3

Case 2:22-cr-00026-PP   Filed 10/18/25   Page 3 of 17   Document 705

j. To participate in the Medicaid program, a PCA provider must enter into a written Medicaid Provider Agreement (the "Provider Agreement") with the Wisconsin Department of Health Services in which the provider certifies that every claim submitted is truthful and that the services billed have been furnished in accordance with state and federal law. The Provider Agreement also requires a certification that the provider has not offered, paid, or received anything of value in return for the referral or provision of Medicaid-covered services.

## Purpose of the Conspiracy

3. The primary purpose of the conspiracy was to unlawfully increase revenues for MONROE and his co-conspirators, and their respective businesses, including WPCS.

## Manner and Means

4. To achieve the purpose of this conspiracy:

   a. P.D. and R.H. referred clients to MONROE for personal care services through WPCS.

   b. In some instances, P.D. and R.H., with MONROE's knowledge, promised and provided rent reductions to incentivize clients signing up for personal care services through WPCS.

   c. In exchange for these client referrals, MONROE paid kickbacks to FRSC in the form of cash or checks.

## Acts in Furtherance

5. To further the conspiracy, the conspirators committed acts in the Eastern District of Wisconsin, including:

   a. On or about September 4, 2020, MONROE caused WPCS to issue a $7,982 check with the memo line "consultant fee" to FRSC.

4

b.  On or about December 10, 2020, MONROE caused WPCS to issue a $10,216.50 check with the memo line "consultant fee" to FRSC.

c.  On or about March 4, 2021, MONROE caused WPCS to issue a $10,197 check with the memo line "consultant fee" to FRSC.

d.  On or about June 23, 2021, MONROE caused WPCS to issue a $10,164 check with the memo line "consultant fee" to FRSC.

e.  On or about September 30, 2021, MONROE caused WPCS to issue a $9,469.25 check with the memo line "referral fee" to FRSC.

f.  On or about December 23, 2021, MONROE caused WPCS to issue a $9,806.50 check with the memo line "consultant fee" to FRSC.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Offering or Paying a Healthcare Kickback)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 30, 2021, in the State and Eastern District of Wisconsin,

**LENARD MONROE**

knowingly and willfully offered to pay and paid remuneration, namely $9,469.25, to induce P.D. and R.H. to refer individuals to Wellness Personal Care Services for personal care services, a service for which payment may be made in whole or in part under Wisconsin Medicaid, a Federal health care program.

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

# COUNTS THREE THROUGH TWENTY

**THE GRAND JURY FURTHER CHARGES THAT:**

**Background**

1. Paragraph 2, Subparagraphs a-j, of Count One of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

**The Scheme**

2. Beginning by at least November 2019, and continuing through at least January 2022, in the State and Eastern District of Wisconsin and elsewhere,

**LENARD MONROE**

and others knowingly and willfully executed and attempted to execute a scheme to defraud a health care benefit program, namely Wisconsin Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of such program, in connection with the delivery of and payment for health care benefits, items, and services.

3. The scheme to defraud included the following:

 a. P.D. and R.H. controlled various rental units in Milwaukee, Wisconsin. They advertised and provided discounted rent to individuals who qualified for Medicaid services as an incentive for them to enroll in supportive care services through their agencies, ATOL and/or FRSC. With MONROE's knowledge, P.D. and R.H. offered further discounts on rent if clients qualified for and enrolled in personal care services through WPCS.

7

b. P.D. and R.H. referred clients to MONROE and WPCS. MONROE then, through WPCS, billed Medicaid for services allegedly provided to these clients. MONROE paid FRSC for these referrals based upon the number of units WPCS billed Medicaid for services allegedly provided to the clients who were referred by P.D. and R.H.

c. P.D. and R.H. coached Medicaid members to feign limitations in their activities of daily living to increase the hours that could be billed to Medicaid.

d. MONROE, through WPCS, billed Medicaid for the maximum number of hours of service approved for each client rather than according to actual services provided.

e. WPCS maintained weekly timesheets of the services allegedly provided to each client. MONROE created template timesheets for each client and instructed WPCS's alleged personal care workers, such as J.M., to duplicate those timesheets each week to justify WPCS's billing of Medicaid. Each client's timesheets were completed the same way each week to match the client's template form, without respect to actual services rendered.

f. MONROE knowingly submitted and caused to be submitted Medicaid billing that misstated the duration, frequency, date, and nature of the services provided, as well as the number of miles the personal care worker traveled to provide services.

8

4. MONROE submitted and caused to be submitted claims totaling over $1 million, which contained false and fraudulent statements, and which caused Wisconsin Medicaid to pay him over $1 million to which he was not entitled.

5. On or about the dates set forth below, in the State and Eastern District of Wisconsin,

**LENARD MONROE,**

for the purpose of executing the scheme described above, and in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully submitted and caused the submission of the following false and fraudulent claims on the dates below, which falsely represented the nature and extent of services provided, which caused payments in the following amounts:

| Count | Service Date | Billed Date | Member | Amount Billed | Amount Paid |
|---|---|---|---|---|---|
| 3 | 11/10/2019-11/16/2019 | 1/2/2020 | O.H. | $402.50 | $292.60 |
| 4 | 2/2/2020 | 3/9/2020 | O.H. | $51.75 | $43.11 |
| 5 | 2/23/2020-2/29/2020 | 3/5/2020 | M.J. | $724.50 | $603.54 |
| 6 | 3/15/2020-3/21/2020 | 3/25/2020 | D.K. | $885.50 | $737.66 |
| 7 | 3/26/2020-3/28/2020 | 5/6/2020 | U.A. | $155.25 | $129.33 |
| 8 | 3/29/2020-4/4/2020 | 4/9/2020 | A.C. | $845.25 | $704.13 |
| 9 | 3/29/2020-3/31/2020 | 4/9/2020 | J.A. | $345 | $287.40 |
| 10 | 4/5/2020-4/11/2020 | 4/16/2020 | A.B. | $644 | $536.48 |
| 11 | 5/10/2020-5/16/2020 | 5/19/2020 | D.K. | $885.50 | $737.66 |

| 12 | 5/10/2020-5/16/2020 | 5/19/2020 | M.J. | $724.50 | $603.54 |
| 13 | 7/26/2020-8/1/2020 | 8/5/2020 | D.B. | $925.75 | $771.19 |
| 14 | 5/23/2021 – 5/29/2021 | 6/4/2021 | U.A. | $402.50 | $335.30 |
| 15 | 10/17/2021-10/23/2021 | 10/28/2021 | A.B. | $483 | $402.36 |
| 16 | 10/17/2021-10/23/2021 | 12/3/2021 | A.C. | $845.25 | $704.13 |
| 17 | 10/17/2021-10/23/2021 | 10/28/2021 | D.K. | $684.25 | $570.01 |
| 18 | 10/17/2021-10/23/2021 | 10/28/2021 | J.A. | $805 | $670.60 |
| 19 | 10/17/2021-10/23/2021 | 10/28/2021 | M.J. | $362.25 | $301.77 |
| 20 | 11/21/2021-11/27/2021 | 12/2/2021 | J.A. | $805 | $670.60 |

Each in violation of Title 18, United States Code, Sections 1347 and 2(a).

## COUNT TWENTY-ONE
(Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. On or about October 25, 2021, in the State and Eastern District of Wisconsin,

**LENARD MONROE**

knowingly devised, and participated in a scheme to defraud departments and agencies of the United States government and others to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises (hereinafter the "scheme"), which scheme is more fully described below.

2. At all times material to this Third Superseding Indictment:

    a. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering due to the COVID-19 or coronavirus pandemic.

    b. The CARES Act appropriated approximately $178 billion to reimburse health care providers for increased expenses and lost revenue attributable to COVID-19.

    c. The Provider Relief Fund was established by the CARES Act and was designed to provide financial support to eligible healthcare providers impacted by the COVID-19 pandemic in the form of General and Targeted distributions.

d. The United States Department of Health and Human Services ("HHS"), through its agency, the Health Resources and Services Administration ("HRSA"), oversaw and administered the Provider Relief Fund.

e. One way to have been eligible for the General Distribution was for a provider to have billed Medicare fee-for-service in 2019, been a known Medicaid provider, and provided after January 31, 2020, diagnoses, testing, or care for individuals with possible or actual cases of COVID-19.

f. HHS made four general distributions, in separate phases. Phase 4 provided $17 billion for providers' lost revenue and COVID-19 related expenses incurred between July 1, 2020, and March 31, 2021.

g. In December 2021, HRSA began distributing the Phase 4 General Distribution ("Phase 4 Payment"). The Phase 4 Payment compensated providers based on their reported changes in operating revenues and expenses attributable to the coronavirus pandemic.

h. Providers were required to establish their eligibility for the Phase 4 Payment by providing their operating revenues and expenses from patient care for the first, third, and fourth quarters of 2019, the third and fourth quarters of 2020, and the first quarter of 2021. Providers were also required to provide supporting documentation for those figures in the application, including their most recently filed federal income tax return.

12

i. Recipients of Provider Relief Fund payments were required to agree to the Terms and Conditions specific to the distribution in which they received a payment.

j. MONROE owned and operated WPCS) which was a PCA that billed Wisconsin Medicaid for services purportedly provided to adults with disabilities and elderly people in Milwaukee, Wisconsin.

**The Scheme to Defraud**

3. The essence of MONROE's scheme to defraud was to obtain a Phase 4 Payment by making materially false statements and representations concerning WPCS's operating revenues and expenses from patient care during time periods occurring between January 2019 and March 2021.

4. In furtherance of the scheme, on October 25, 2021, MONROE submitted a false Phase 4 Provider Relief Payment Application, in which he falsely claimed that WPCS suffered lost revenues in Quarters 3 and 4 of 2020, as compared to Quarters 3 and 4 of 2019. Attached to MONROE's application was an IRS Form 1120 – U.S. Corporation Income Tax Return for WPC for the year 2020, wherein he falsely represented to HRSA that his total 2020 revenues were substantially less than WPCS' actual revenues.

5. In the application, MONROE checked a box acknowledging his understanding of the Terms and Conditions. Additionally, by clicking "submit," MONROE indicated that he understood that non-compliance with any Term or Condition would result in administrative, civil, and/or criminal action being taken, and

13

that all of the information he was submitting to a Federal Government System, under penalty of perjury of law, was true, correct, and accurate.

6. On December 16, 2021, HRSA informed MONROE that his application was approved, and based upon his false application, on January 26, 2022, MONROE and WPCS received $274,167.85 to which they were not entitled.

**Execution of the Scheme**

7. On or about the date specified below, for the purpose of executing the above-described scheme, Monroe knowingly transmitted and caused to be transmitted in interstate commerce by means of wire communications, from the Eastern District of Wisconsin to HRSA, located outside the State of Wisconsin, signs, signals, and sounds in the form of the following wire communication:

| **Approximate Date** | **Description of Wire** |
|---|---|
| October 25, 2021 | MONROE electronically submitted and caused to be submitted the Phase 4 Payment application and supporting documentation from the Eastern District of Wisconsin to HRSA, located outside the State of Wisconsin. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWENTY-TWO
(Engaging in Unlawful Monetary Transactions)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 8, 2022, in the State and Eastern District of Wisconsin,

**LENARD MONROE**

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is a wire transfer of approximately $129,112.49 to "Makes and Models LLC," which was used to purchase a 2018 Dodge Challenger, a vehicle bearing vehicle identification number (VIN) 2C3CDZH93JH100779, such property having been derived from a specified unlawful activity, that is, wire fraud committed in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1957.

# FORFEITURE NOTICE

1. Upon conviction of one or more offenses in violation of Title 18, United States Code, Sections 1347 and 1957, and Title 42 United States Code, Section 1320a-7b, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any and all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violations and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the violations, including but not limited to the following:

   a. approximately $1,022.98 in United States currency seized from BMO Harris Account ending in x9173, in the name of Wellness Personal Care Service;

   b. approximately $3,767.75 in United States currency seized from BMO Harris Account ending in x8472, in the name of Wellness Personal Care Service;

   c. approximately $79.65 in United States currency seized from Wells Fargo Account ending in x6511, in the name of Wellness Personal Care;

   d. approximately $65.34 in United States currency seized from Wells Fargo Account ending in x7022, in the name of LENARD MONROE;

   e. a 2018 Dodge Challenger SRT "Demon," bearing VIN# 2C3CDZH93JH100779, owned by LENARD MONROE; and

   f. a money judgment in the amount of proceeds the defendants obtained, directly or indirectly, as a result of the offense or offenses of conviction.

2. If any of the property described above, as a result of any act or omission by a defendant cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other

property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

Dated: _____

_____
RICHARD G. FROHLING
Acting United States Attorney