UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                             Case No. 22-CR-26

LENARD MONROE,

        Defendant.

## DEFENDANT LENARD MONROE'S SENTENCING MEMORANDUM

At one point during the trial, the parties discussed whether an "ostrich instruction" was appropriate. Although the "ostrich instruction" was ultimately not used in Lenard's case, it encapsulates Lenard Monroe's conduct here. Lenard came to the Personal Care Agency business with good intentions. But when things started looking questionable or suspect (both before and after Phil Daniels), Lenard didn't investigate, he didn't question, and he didn't stop the conduct. Instead, he buried his head in the sand, ministerially filed paperwork, and let the business keep on moving. That picture wasn't truly clear to him until he saw the evidence unfolded at trial. But he sees that now. He understands and accepts the jury's verdict just as he will accept this Court's sentence.

Prior to the offense conduct in this case, Lenard Monroe had got out of prison, turned his life around and dedicated his life to God. As such, his conduct in this case is aberrant to the life he was creating and the person he was striving to be. Lenard has no correctional treatment or vocational needs. He has strong ties to the community

1

through his family, friends, and church. The offense he is convicted of is non-violent, and there is nothing from the case or his history to suggest the public needs protection from Lenard Monroe. This entire ordeal has already had a profound impact on Lenard's life. Lenard Monroe asks the court to impose a below-guideline sentence at the Court's discretion.

## I. LEGAL STANDARD AND SENTENCING GUIDELINES

A district court must first determine the defendant's sentencing range under the advisory guidelines as an initial benchmark and then look to the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate sentence that is tailored to the individual offender and her offense. *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Thompson*, 515 F.3d 556, 561 (6th Cir. 2008). The sentencing guidelines are one of seven equally important factors the Court considers in determining a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2).

Lenard Monroe and counsel have reviewed the proposed sentencing guidelines in the Presentence Report. Based on a total offense level of 33 and a criminal history category of II, the guideline imprisonment range is 151 to 188 months (although there is a statutory maximum of five years on Count One and a statutory maximum of ten years on Counts Two and Twenty-Two). PSR ¶ 221. However, as will be discussed below, a sentence within the sentencing guideline range is greater than necessary to meet the purposes of 18 U.S.C. § 3553.

2

## II. RELEVANT § 3553 SENTENCING FACTORS SUPPORT REQUESTED SENTENCE.

### A. Although The Health Care Fraud Could Not Have Occurred Without Lenard Monroe, His Actual Conduct Is Less Egregious than The Conduct of Certain Co-conspirators.

While Lenard was the face of Wellness Personal Care ("WPC") and the conduit through whom all billings passed, he was not really in charge of how WPC operated. Tammy Virgil established the agency with Lenard as the figurehead. Tammy Virgil filled out the paperwork to establish the agency, she was the one who was familiar with the rules and regulations related to personal care agencies. She created the forms and procedures and determined how clients would be billed and what services the personal care workers had to perform. Lenard testified that he didn't know that max-billing was wrong, that he trusted that Tammy had set it up properly. Tammy was happy to take money (not directly of course) for her role. But Lenard was the figurehead and when things went south, he was the one holding the bag. This is not to say that Lenard is absolved of any responsibility for how WPC was set up and its billing practices. He is responsible; it was his name on the company. The fact that Tammy didn't want her name associated with the company was a red flag. The fact that she didn't want to be paid directly was another. But Lenard didn't investigate. Instead of researching Personal Care Agency rules and regulations or confronting Tammy Virgil, he buried his head in the sand.

Likewise, the trial evidence was clear that Phil Daniels oversaw the clients that he referred to Wellness Personal Care. Most of Phil's clients that testified didn't know who Lenard Monroe was – maybe they heard the name before. But they

3

all knew Dr. Phil. It was Phill who instructed clients to lie to doctors. It was Phil who put clients into apartments that he controlled. It was Phil who instructed caregivers to not perform personal care services and merely run errands instead. It was Phil who had caregivers fill out multiple timesheets. It was Phil who had the caregivers forge signatures of clients and other caregivers. The things that Phil did are the gravamen of the fraud charges that were proved at trial. Again, this is not to say that Lenard does not bear responsibility for fraud. He does. He was the one who reviewed the timesheets, which was his primary responsibility. The only way that someone responsible for reviewing the timesheets doesn't catch the blatantly false timesheets is if they are not actually looking at the timesheets. All that mattered to Lenard were the hours on that timesheet, not the services provided.

The health care fraud could not have occurred without Lenard Monroe. He was essential to the false billings that were submitted to Medicare. But at the same time, both Tamy and Phil Daniels played much more substantial roles in the Medicaid fraud and the Court's sentence should reflect that.

When the Court weighs the fraud convictions and the other counts of conviction against the other § 3553 sentencing factors, a below-guideline sentence is "sufficient but not greater than necessary."

### B. Lenard Monroe's Personal Characteristics Support a Below-Guideline Sentence.

Lenard Monroe is 52 years old. He is a good man. He is kind and thoughtful. He is earnest. He is highly involved with his family, who need his love and support. But first and foremost, Lenard is a man of faith. These qualities make

it difficult to understand how Lenard got caught up in the offenses charged. There is a juxtaposition between the offense conduct and the type of man that the character letters describe. Lenard's ability to see the best in people may have prevented him from looking too deeply at how Tammy Virgil was setting up WPC (and its unusual payment arrangement with Tammy's daughter) or looking closely at what Phil Daniels was doing in WPC's name. Additionally, the character letters describe a man, who wants to do the right thing and live a virtuous life. He has support from his family, his friends and his churches. With this support, there should be no doubt that Lenard Monroe will emerge from whatever sentence the Court imposes and attempt to live a virtuous life.

Lenard was released from prison for a drug conviction in 2010. He came from that experience committed to God and intent on living a good life, associating with the right people and making an honest living:

> I met Lenard Monroe about 16 years ago where shortly after he lived with me for a year while getting acclimated to society through my experience, he made a few things extremely clear. That he would never go back to prison, that he's going to be right with the Lord, and that the Lord will make him wealthy the right way. He is one of the most resilient and consistent people I have ever met. Because of his commitment to these things Lenard was very selective of who he associated with and kept a very small circle he will absolutely not deal with anything illegal or questionable. He goes to work then to gym and home constantly occasionally going to movies and out to eat normally alone.

Exhibit A, Letter from Timothy Tyree. Lenard worked hard to be a genuine and kind person and live up to the standards of his faith:

> In my personal dealings with Mr. Monroe, I have experienced him to be respectful, sincere, and straightforward in communication. In the matters we have discussed, he has presented himself in a manner that I have found to be forthright and genuine. He has shown a willingness to engage

5

Case 2:22-cr-00026-PP    Filed 03/03/26    Page 5 of 9    Document 838

> in open dialogue, to listen carefully, and to respond thoughtfully when issues were addressed.

Exhibit B, Letter from Pastor Roddell Todd. Lenard also demonstrated a willingness and dedication to helping others:

> I am also aware of multiple occasions in which Mr. Monroe quietly assisted individuals and families in our community who were experiencing hardship. He has helped provide clothing, basic necessities, and practical support without seeking attention or recognition. For example, I personally observed him step in to assist a family connected to our ministry during a difficult period, ensuring they had essential items when the need was immediate. These actions reflected compassion and a sincere concern for the well-being of others.

Exhibit B, Letter from Pastor Roddell Todd.

After leaving prison, Lenard also rededicated himself to being there for his children and grandchildren:

> My daughter calls her granddad for everything, and whenever she reaches out, he is there. My father provides the things money cannot buy: time, advice, guidance, love, and support—not only to me, but to all of my brothers as well. I have watched him endure painful seasons in life with strength and grace. I have also witnessed him dedicate himself to his faith, his church, and to helping family, friends, and others find a positive path forward.
>
> In addition to my children, he has three other granddaughters who live out of state, yet he never misses a birthday or important milestone in their lives. He is not only my hero; he is now the role model his grandchildren look up to.

Exhibit C, Letter from Chiara Monroe.

Like Chiara, who speaks about Lenard's dedication to his faith, Pastor Mario Caple sees Lenard as a man of God, who strives to grow personally and spiritually:

> Lenard has consistently demonstrated himself to be a man of faith and integrity. He strives to live as a man of God, guided by strong moral principles. In my experience, this is reflected in how he shows respect to

6

> others, takes responsibility for his actions, and seeks to grow spiritually and personally. I have witnessed him encourage others, speak words of hope, and show compassion to those who were struggling.

Exhibit D, Letter from Pastor Mario Caple. Lenard has stuck to his faith during the government investigation and prosecution:

> This situation has brought him great sadness, yet his faith and support system have strengthened him. Even under this weight, I have seen him grow and continue to stand as a man of character.

Exhibit C, Letter from Chiara Monroe. Pastor Rodell Todd further describes the impact of this case on Lenard:

> Particularly during the current proceedings, I have observed Mr. Monroe approach conversations with seriousness and reflection. In pastoral settings, he has acknowledged the weight of the situation before him and its impact on him and his family. From my vantage point, he has carried himself with humility and an awareness of the responsibilities that lie ahead.
>
> Based on my personal experience, Mr. Monroe has demonstrated a consistent desire to remain engaged with his family and responsive to needs that arise within his community. Throughout my relationship with him, I have experienced an individual who strives to conduct himself in a trustworthy and genuine manner. Therefore, I remain confident that, moving forward, Mr. Monroe will continue to work toward the betterment of our community and will seek to rectify any mistakes he may have made in the past.

Exhibit B, Letter from Pastor Roddell Todd.

Finally, the character letter from Pastor Mario Caple provides good insight as to what the Court can expect from Lenard Monroe going forward:

> During the many years I have known Lenard, he has shown a genuine desire to do better in life and to be a positive influence on the people around him. He values family, faith, and personal accountability. While no one is without faults, Lenard has demonstrated humility and a willingness to learn from his mistakes and move forward with purpose.
>
> I believe Lenard is capable of continued growth and positive change. He has the potential to be a constructive member of the community and to live in a way that reflects the faith he professes.

Exhibit D, Letter from Pastor Mario Caple.

Lenard's character, his role as a father and as a man active in his faith community are all mitigating factors the Court must consider when imposing sentence. These are also characteristics that should give the Court great hope for Mr. Monroe when he finishes with whatever sentence the Court imposes. Based upon Lenard's personal characteristics a below guideline sentence will be sufficient but not greater than necessary to meet the sentencing goals of § 3553.

### C. The § 3553(a)(2) Factors All Support a Below Guideline Sentence.

Under § 3553(a), the sentence imposed by the court must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D).

Any prison sentence will reflect the seriousness of the offense, promote respect for the law and provide just punishment. Prison is a significant deprivation of one's liberty. Lenard is personally deterred. He is currently fifty-two years old and is personally deterred. Moreover, based on his age he will be more unlikely to reoffend. *See* Kim Steven Hunt and Billy Easley II, *The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Commission, December 2017 (the "2017 Study"); Kim Steven Hunt and Robert Dumville, *Recidivism Among Federal Offenders: A Comprehensive Overview*, U.S. Sentencing Commission, March 2016 (the "2016 Study"). And a prison sentence sends the message that defrauding a government program is a serious crime and it will be punished.

Lenard does not need any vocational or educational training. He doesn't have any medical or other rehabilitative needs that are best addressed in the prison setting. Although Lenard may avail himself of any educational or vocational opportunities, he does not have any particular need for further educational, vocational or correctional treatment that would require an extensive sentence. Because Lenard has no correctional needs, a prison sentence here is really only about punishment. As such, the sentence imposed by the Court should be below the sentencing guidelines range.

## CONCLUSION

For the foregoing reasons, Lenard Monroe requests that the Court, in its discretion, impose a below-guideline sentence that will be sufficient but not greater than necessary to meet the sentencing goals of 18 U.S.C. § 3553.

Dated this 3rd day of March, 2026.

KRAVIT, HOVEL & KRAWCZYK s.c.

*s/ Brian T. Fahl*
Brian T. Fahl
  State Bar No. 1043244
*Attorney for Defendant Lenard Monroe*

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson - Fifth Floor
Milwaukee, WI 53202
(414) 271-7100 - Telephone
(414) 271-8135 - Facsimile
btf@kravitlaw.com